No. 12-2810

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| JASON NIEMAN, | ) | |
| | ) | Appeal from the United States |
| *Plaintiff-Appellant,* | ) | District Court for the Central District |
| | ) | of Illinois, Springfield Division |
| v. | ) | |
| | ) | Case No.  3:12-cv-3104 |
| VERSUSLAW, INC., JOSEPH W. | ) | |
| ACTON, YAHOO!, INC., GOOGLE | ) | District Judge Sue E. Myerscough |
| INC., and MICROSOFT CORP., | ) | Magistrate Judge David G. Bernthal |
| | ) | |
| *Defendants-Appellees.* | ) | |

---

## JOINT BRIEF AND SUPPLEMENTAL APPENDIX OF
## DEFENDANTS-APPELLEES VERSUSLAW, INC., JOSEPH W. ACTON,
## YAHOO!, INC., GOOGLE INC., and MICROSOFT CORP.

---

Steven P. Mandell
Steven L. Baron
Elizabeth A.F. Morris
MANDELL MENKES LLC
1 N. Franklin, Suite 3600
Chicago, Illinois 60606
Telephone:    (312) 251-1000
Facsimile:    (312) 251-1010

*Attorneys for Defendants-Appellees*
*VersusLaw, Inc. and Joseph W. Acton*

Jade R. Lambert
PERKINS COIE LLP
131 S. Dearborn St., Suite 1700
Chicago, Illinois 60603
Telephone:    (312) 324-8523
Facsimile:    (312) 324-9400

*Attorneys for Defendant-Appellee*
*Google, Inc.*

Lynn U. Thorpe
GONZALEZ SAGGIO AND HARLAN L.L.C.
Two Prudential Plaza
180 N. Stetson Ave.
Chicago, Illinois 60601
Telephone:    (312) 236-0475
Facsimile:    (312) 236-1750

Peggy A. Miller
GONZALEZ SAGGIO AND HARLAN L.L.C.
292 Madison Ave., Fl. 19
New York, New York 10017
Telephone:    (212) 380-9560
Facsimile:    (212) 380-9561

*Attorneys for Defendants-Appellees*
*Microsoft Corp. and Yahoo!, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENTS

## CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No: 12-2810

Short Caption: Jason Nieman v. VersusLaw, Incorporated

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    VersusLaw, Inc.

    Joseph W. Acton

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mandell Menkes, LLC

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        VersusLaw, Inc. is a wholly-owned subsidiary of Legal Research Center, Inc., a publicly held company.

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        No publicly held company owns 10% or more of Legal Research Center, Inc.'s stock.

Attorney's Signature: /s/ Steven P. Mandell    Date: 8-6-2012

Attorney's Printed Name: Steven P. Mandell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes  ✕  No _____

Address:  1 N. Franklin #3600

        Chicago IL 60606

Phone Number: 312-251-1000    Fax Number: 312-251-1010

E-Mail Address: smandell@mandellmenkes.com

rev. 01/08 AK

ii

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: 12-2810

Short Caption: Jason Nieman v. Versuslaw, Incorporated

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    VersusLaw, Inc.

    Joseph W. Acton

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mandell Menkes, LLC

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        VersusLaw, Inc. is a wholly-owned subsidiary of Legal Research Center, Inc., a publicly held company.

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        No publicly held company owns 10% or more of Legal Research Center, Inc.'s stock.

Attorney's Signature: /s/ Elizabeth A.F. Morris        Date: 8-8-2012

Attorney's Printed Name: Elizabeth A.F. Morris

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes _____    No ⨯

Address: 1 N. Franklin #3600

        Chicago IL 60606

Phone Number: 312-251-1000        Fax Number: 312-251-1010

E-Mail Address: emorris@mandellmenkes.com

rev. 01/08 AK

iii

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: 12-2810

Short Caption: Jason Nieman v. Versuslaw, Incorporated

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

VersusLaw, Inc.

Joseph W. Acton

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mandell Menkes, LLC

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

VersusLaw, Inc. is a wholly-owned subsidiary of Legal Research Center, Inc., a publicly held company.

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

No publicly held company owns 10% or more of Legal Research Center, Inc.'s stock.

Attorney's Signature: /s/ Steven L. Baron    Date: 8-10-2012

Attorney's Printed Name: Steven L. Baron

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes _____    No  X

Address: 1 N. Franklin #3600

Chicago IL 60606

Phone Number: 312-251-1000    Fax Number: 312-251-1010

E-Mail Address: sbaron@mandellmenkes.com

rev. 01/08 AK

iv

Case: 12-2810    Document: 6    Filed: 08/10/2012    Pages: 2

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: 12-2810

Short Caption: Jason Nieman v. Versuslaw, Incorporated, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Google Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Perkins Coie LLP

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

None

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature: s/ Jade Lambert                                Date: August 10, 2012

Attorney's Printed Name: Jade Lambert

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes  X    No _____

Address: Perkins Coie LLP, 131 South Dearborn Street, Suite 1700, Chicago, IL 60603

Phone Number: (312) 324-8400                    Fax Number: (312) 324-9523

E-Mail Address: JLambert@perkinscoie.com

rev. 01/08 AK

v

Case: 12-2810    Document: 11    Filed: 08/14/2012    Pages: 2

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 12-2810

Short Caption: Jason Nieman v. Versuslaw, Incorporated, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Microsoft Corporation and Yahoo! Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gonzalez, Saggio and Harlan, L.L.C.

(3)    If the party or amicus is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature: s/ Lynn U. Thorpe    Date: 8/14/2012

Attorney's Printed Name: Lynn U. Thorpe

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✕    No _____

Address: Gonzalez, Saggio and Harlan, L.L.C.

180 N. Stetson Avenue, Suite 4425, Chicago, IL 60601

Phone Number: 312.236.0475    Fax Number: 312.236.1750

E-Mail Address: lynn_thorpe@gshllc.com

rev. 01/08 AK

Case: 12-2810    Document: 20    Filed: 10/11/2012    Pages: 2

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 12-2810

Short Caption: Jason Nieman v. Versuslaw, Incorporated, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ✓ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Microsoft Corporation and Yahoo! Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gonzalez Saggio & Harlan LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

       None

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

       None

Attorney's Signature: s/ Peggy A. Miller    Date: 10/11/12

Attorney's Printed Name: Peggy A. Miller

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ✕

Address: Gonzalez Saggio & Harlan LLP

       292 Madison Avenue, Floor 19, New York, New York 10017

Phone Number: (212) 380-9560    Fax Number: (212) 380-9561

E-Mail Address: peggy_miller@gshllp.com

rev. 01/08 AK

# **TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENTS ........................................... i

TABLE OF AUTHORITIES .................................................................... x

STATEMENT OF JURISDICTION ............................................................ 1

ISSUES PRESENTED ON APPEAL............................................................ 2

STATEMENT OF THE CASE.................................................................. 3

STATEMENT OF FACTS .................................................................... 4

STANDARD OF REVIEW..................................................................... 6

SUMMARY OF THE ARGUMENT ............................................................... 7

ARGUMENT ............................................................................... 8

I.      Defendants' Conduct Is Protected Under the First Amendment...................... 8

        A.      Publication of Matters in the Public Record Is Protected by the
                First Amendment ...................................................... 9

        B.      Defendants Are Protected by the First Amendment, Even if
                Employers or Potential Employers Discover Information About
                Nieman Online ....................................................... 11

        C.      The Law Regarding Publication of *Private* Information Does Not
                Apply to Publication of *Public* Information.......................... 12

II.     The District Court Correctly Ruled That Each Count Of The Second
        Amended Complaint Failed To State A Claim Upon Which Relief May Be
        Granted.................................................................... 13

        A.      Counts I and III, Alleging Claims Under the Illinois Human Rights
                Act, Were Properly Dismissed ........................................ 13

        B.      Counts II And IV Fail to State a Commercial Misappropriation
                Claim................................................................ 17

        C.      Nieman's Section 1981 Claims in Counts V and VI Are Fatally
                Deficient............................................................ 19

        D.      Count VII, Brought Under the Lanham Act, Does Not State A
                Claim................................................................ 20

E.      Count VIII, Alleging Intentional Interference with Prospective
        Advantage, Is Legally Insufficient ........................................................ 22

F.      The Unjust Enrichment/Civil Conspiracy Allegations Do Not State
        Viable Claims .................................................................................... 24

G.      Count X, the Alleged RICO Claim, Fails to State a Claim upon
        Which Relief May Be Granted .............................................................. 26

III.    Section 230 Of The Communications Decency Act Provides An Alternate
        Basis For Affirming Dismissal Of Most Of Nieman's Claims ........................ 28

A.      Defendants Are Providers of Interactive Computer Services.............. 29

B.      The Allegedly Harmful Content Was Created by Third Parties .......... 30

C.      Nieman Seeks to Treat Defendants as Publishers ............................... 33

D.      Whether a Defendant Earns Revenue from Third Party Content
        Has No Bearing on a Section 230 Analysis ........................................... 34

E.      Nieman's RICO and Right of Publicity Claims Are Subject to
        Section 230 Defenses .............................................................................. 35

CONCLUSION ........................................................................................................ 38

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................................... 40

CERTIFICATE OF SERVICE .................................................................................. 41

SUPPLEMENTAL APPENDIX ................................................................................ 42

ix

# TABLE OF AUTHORITIES

## Cases

*A.P. Props., Inc. v. Rattner,*
  2011 IL App (2d) 110061, ¶ 11........................................................................... 25

*Allison v. Vintage Sports Plaques,*
  136 F.3d 1443 (11th Cir. 1998) ........................................................................ 37

*Almeida v. Amazon.com, Inc.,*
  456 F.3d 1316 (11th Cir. 2006) ........................................................................ 37

*Anderson v. Centers for New Horizons,*
  No. 11 C 9233, 2012 WL 2396359, at *2 (N.D. Ill. June 25, 2012)......................... 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 6, 7

*Associated Underwriters of Am. Agency, Inc. v. McCarthy,*
  356 Ill. App. 3d 1010 (1st Dist. 2005) .............................................................. 23

*Bartnicki v. Vopper,*
  532 U.S. 514 (2001) ........................................................................................ 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 6, 7

*Ben Ezra, Weinstein & Co. v. America Online, Inc.,*
  206 F.3d 980 (10th Cir. 2000) .......................................................................... 31

*Berg v. First State Ins. Co.,*
  915 F.2d 460 (9th Cir. 1990) ............................................................................ 27

*Best v. Berard,*
  776 F. Supp. 2d 752 (N.D. Ill. 2011) ................................................................ 18

*Black v. Google Inc.,*
  No. 10–02381 CW, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010)................ 35

*Blair v. Nev. Landing P'ship,*
  369 Ill. App. 3d 318 (2d Dist. 2006) .................................................................. 19

*Blumenthal v. Drudge,*
  992 F. Supp. 44 (D.D.C. 1998) ..................................................................... 32, 35

*Buchanon v. Serbin Fashions, Inc.,*
   698 F. Supp. 731 (N.D. Ill. 1988) .......................................................... 23

*Carafano v. Metrosplash.com,*
   339 F.3d 1119 (9th Cir. 2003) ............................................................... 31

*CBOCS W., Inc. v. Humphries,*
   553 U.S. 442 (2008) ............................................................................... 20

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
   519 F.3d 666 (7th Cir. 2008) ............................................... 28, 29, 30, 33

*City of Cincinnati v. Discovery Network, Inc.,*
   507 U.S. 410 (1993) ............................................................................... 10

*Cox Broad. Corp. v. Cohn,*
   420 U.S. 469 (1975) ...................................................................... 9, 10, 27

*D.H. Stands LLC v. CBS, Inc., et al.*
   [333 Ill. App. 3d 755] IL 1st Dist. 8/16/2002 ......................................... 17

*Doe v. Bates,*
   No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006)...... 34

*Doe v. GTE Corp.,*
   347 F.3d 655 (7th Cir. 2003) ..................................................... 28, 35, 36

*Dorado v. Aargus Security Systems, Inc.,*
   Case No. 00 C 4002, 2002 WL 230776 (N.D. Ill. Feb. 14, 2002)...................... 15, 16

*Fla. Star v. B.J.F.,*
   491 U.S. 524 (1989) .................................................................................. 9

*GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,*
   64 F.3d 1112 (7th Cir. 1995) ................................................................... 7

*Gentry v. eBay, Inc.,*
   99 Cal. App. 4th 816 (2002) ................................................................... 31

*Global Royalties, Ltd. v. Xcentric Ventures, LLC,*
   544 F. Supp. 2d 929 (D. Ariz. 2008)........................................................ 35

*Grove Fresh Distribs., Inc., v. Everfresh Juice Co.,*
   24 F.3d 893 (7th Cir. 1994) ......................................................... 9, 10, 12

*GW Equity LLC v. Xcentric Ventures LLC,*
   No. 3:07-CV-976-O, 2009 WL 62173, at *13 (N.D. Tex. Jan. 9, 2009) .................. 35

*Haynes v. Alfred A. Knopf, Inc.,*
    8 F.3d 1222 (7th Cir. 1993) ........................................................ 9, 12, 13

*Hoffelt v. Ill. Dep't of Human Rights,*
    367 Ill. App. 3d 628 (1st Dist. 2006) ..................................... 14

*Indeck N. Am. Power Fund v. Norweb PLC,*
    316 Ill. App. 3d 416 (1st Dist. 2000) ..................................... 26

*Johnson v. Cypress Hill,*
    641 F.3d 867 (7th Cir. 2011) .................................................. 28

*Jurin v. Google Inc.,*
    695 F. Supp. 2d 1117 (E.D. Cal. 2010) ................................ 30

*Martis v. Grinnell Mut. Reinsurance Co.,*
    388 Ill. App. 3d 1017 (3d Dist. 2009) .................................... 25

*Meier v. Musburger,*
    588 F. Supp. 2d 883 (N.D. Ill. 2008) ..................................... 27

*Midwest Grinding Co. v. Spitz,*
    976 F.2d 1016 (7th Cir. 1992) .......................................... 27, 37

*Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.,*
    576 F. Supp. 2d 868 (N.D. Ill. 2008) ..................................... 22

*Murawski v. Pataki,*
    514 F. Supp. 2d 577 (S.D.N.Y. 2007) ........................... 30, 32, 34

*Nieman v. Nationwide Mut. Ins. Co.,*
    706 F. Supp. 2d 897 (C.D. Ill. 2010) ..................................... 12

*O'Rourke v. Palisades Acquisition XVI, LLC,*
    635 F.3d 938 (7th Cir. 2011)
    *cert. denied,* 132 S. Ct. 1141 (2012) ..................................... 19

*Olson v. Wexford Clearing Servs. Corp.,*
    397 F.3d 488 (7th Cir. 2005) ................................................... 7

*Packman v. Chi. Tribune Co.,*
    267 F.3d 628 (7th Cir. 2001) .................................................. 21

*Parisi v. Sinclair,*
    774 F. Supp. 2d 310 (D.D.C. 2011) ....................................... 38

*Parker v. Google Inc.,*
   422 F. Supp. 2d 492 (E.D. Pa. 2006)......................................................... 30

*PepsiCo, Inc. v. Redmond,*
   46 F.3d 29 (7th Cir. 1995) ......................................................................... 10

*Perfect 10, Inc. v. CCBill LLC,*
   488 F.3d 1102 (9th Cir. 2007) ................................................................... 37

*Redelmann v. Claire Sprayway, Inc.,*
   375 Ill. App. 3d 912 (1st Dist. 2007).................................................. 25, 26

*Richmond v. Nationwide Cassel L.P.,*
   52 F.3d 640 (7th Cir. 1995) ................................................................. 27, 28

*Rosetta Stone Ltd. v. Google Inc.,*
   732 F. Supp. 2d 628 (E.D. Va. 2010), *aff'd*, 676 F. 3d 144 (4th Cir. 2012)............ 35

*Santana v. Cook Cnty. Bd. of Review,*
   679 F.3d 614 (7th Cir. 2012) ....................................................................... 7

*Schivarelli v. CBS, Inc.,*
   333 Ill. App. 3d 755 (1st Dist. 2002) ........................................................ 17

*Search King, Inc. v. Google Tech., Inc.,*
   No. CIV-02-1457-M, 2003 WL 21464568, at *4 (W.D. Okla. May 27, 2003).......... 11

*Skolnick v. Altheimer & Gray,*
   191 Ill. 2d 214 (2000)................................................................................... 9

*Snyder v. Phelps,*
   __ U.S. __, 131 S. Ct. 1207 (2011) ........................................................... 18

*Stayart v. Google Inc.,*
   783 F. Supp. 2d 1055 (E.D. Wis. 2011).............................................. 18, 32

*Stayart v. Yahoo! Inc.,*
   623 F.3d 436 (7th Cir. 2010). .......................................................... passim

*Swanson v. Citibank, N.A.,*
   614 F.3d 400 (7th Cir. 2010) ....................................................................... 6

*Thomason v. Nachtrieb,*
   888 F.2d 1202 (7th Cir. 1989) ..................................................................... 7

*United States Equal Employment Opportunity Commission v. City of Evanston,*
   854 F. Supp. 534 (N.D. Ill. 1994) ............................................................. 15

*United States v. Corbitt,*
  879 F.2d 224 (7th Cir. 1989) ............................................................... 10

*Voyles v. Sandia Mortg. Corp.,*
  196 Ill. 2d 288 (2001).......................................................................... 24

*Werblood v. Columbia Coll.,*
  180 Ill. App. 3d 967 (1st Dist. 1989) ................................................. 23

*Wolfe v. Schaefer,*
  619 F.3d 782 (7th Cir. 2010) ............................................................... 13

*Zacchini v. Scripps-Howard Broad. Co.,*
  433 U.S. 562 (1977) ............................................................................. 18

*Zeran v. AOL,*
  129 F.3d 327 (4th Cir. 1997) ........................................................ 28, 33

**Statutes**

15 U.S.C § 1125(a) ............................................................................... 21

15 U.S.C. § 1114(1) ............................................................................. 21

15 U.S.C. § 1127.................................................................................. 22

15 U.S.C. §§ 1051-1072 ...................................................................... 20

15 U.S.C. §§ 1501 *et seq* ..................................................................... 1

18 U.S.C. § 1962.................................................................................. 27

18 U.S.C. §§ 1961 *et seq.* ............................................................... 1, 27

28 U.S.C. § 1291.................................................................................... 2

28 U.S.C. § 1331.................................................................................... 3

28 U.S.C. § 1367(a) ............................................................................... 1

28 U.S.C. § 1441(a) ............................................................................... 3

28 U.S.C. § 1441(c) ............................................................................... 1

28 U.S.C. § 1446.................................................................................... 3

42 U.S.C. § 1981............................................................................... 1, 2

42 U.S.C. § 2000e-3 (a) ................................................................................................ 12

47 U.S.C. § 230(c)(1) ................................................................................... 2, 28, 29, 30

47 U.S.C. § 230(e)(1) ................................................................................................ 36

47 U.S.C. § 230(f)(2) ........................................................................................... 29, 30

765 ILCS 1075/35(b)(2). ............................................................................................ 18

765 ILCS 1075/5. ....................................................................................................... 18

765 ILCS 1075/60 ...................................................................................................... 17

775 ILCS 5/6-101(A) and (B) ................................................................................... 13

775 ILCS 5/7A-102(G)(2) .......................................................................................... 14

**Rules**

Circuit Rule 28(c) ......................................................................................................... 4

Fed. R. Civ. P. 12(b) ................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 3, 6

Fed. R. Civ. P. 12(c) ............................................................................................... 6, 7

Fed. R. Civ. P. 5.2 ...................................................................................................... 12

## <u>STATEMENT OF JURISDICTION</u>

Plaintiff-Appellant Jason Nieman's ("Nieman") Jurisdictional Statement is not complete because he omitted citations to statutes required to support jurisdiction. Defendants-Appellees supplement as follows.

Nieman originally filed this case on or about February 29, 2012, in the Seventh Judicial Circuit of Sangamon County, Illinois. On April 3, 2012, Defendants-Appellees VersusLaw, Inc. ("VersusLaw"), Joseph W. Acton ("Acton"), Google Inc. ("Google"), Yahoo!, Inc. ("Yahoo!"), and Microsoft Corporation ("Microsoft") jointly removed the action to the Central District of Illinois pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446 because the federal trial court had original jurisdiction over certain claims in the pleadings. (C.D. Ill. Dkt. 1.) Specifically, Nieman's Second Amended Complaint alleged federal causes of action under the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*, and the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.* The trial court also exercised supplemental jurisdiction to consider the state law claims under 28 U.S.C. §§ 1367(a) and 1441(c).

On June 13, 2012, Magistrate Judge David Bernthal issued a Report and Recommendation that the case should be dismissed in its entirety. (C.D. Ill. Dkt. 39.) On August 3, 2012, District Judge Sue E. Myerscough adopted the Report and Recommendation, dismissed this matter with prejudice, and entered a final order and judgment disposing of all claims. (C.D. Ill. Dkt. 44-45.) Nieman timely filed his notice of appeal of that judgment the same day. (C.D. Ill. Dkt. 46.) This Court now

has jurisdiction pursuant to 28 U.S.C. § 1291 because Nieman appealed the final decision of a United States District Court.

## **ISSUES PRESENTED ON APPEAL**

1.  Whether the District Court properly dismissed all counts of the Second Amended Complaint, which were all predicated on access Defendants provided to public documents from Nieman's lawsuit against his former employer, because the First Amendment prohibits imposing civil liability based on the dissemination of public court records.[1]

2.  Whether the District Court properly dismissed all counts of the Second Amended Complaint because each failed to state a claim upon which relief may be granted.

3.  Whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), independently barred Nieman's claims for violations of the Illinois Human Rights Act; commercial misappropriation; violations of 42 U.S.C. § 1981; intentional interference with current and prospective economic activity; civil RICO; and unjust enrichment/civil conspiracy.

---

[1] Defendants Microsoft (through Bing), Yahoo!, and Google each provide internet search engines that, in response to a query, provide links to third party websites with relevant content. Defendant VersusLaw is a website that contains third party content. Accordingly, their activities differ. However, in light of this Court's order encouraging the parties to file a joint brief, and because all of the Defendants' activities led to the dissemination and publication of the public record documents that are at issue in this matter, Defendants have used the terms "disseminate" and "publish" throughout this brief to signify each Defendant's respective activities in linking to and publishing third party content.

## STATEMENT OF THE CASE

This is an appeal of the District Court's August 3, 2012 order dismissing claims arising out of Defendants' dissemination of public records from a lawsuit that Nieman initiated. The District Court held that (1) the Defendants' distribution or publication of public court records concerning Nieman is privileged under the First Amendment; (2) Nieman otherwise failed to state any claim upon which relief could be granted; and (3) many of Nieman's claims are independently barred by Section 230 of the Communications Decency Act.

On February 29, 2012, Nieman initiated this action by filing a Complaint in the Circuit Court for Sangamon County, Illinois. On March 13, 2012, Nieman filed a First Amended Complaint, and, on March 20, 2012, Nieman filed his Second Amended Complaint, which is the operative pleading. (C.D. Ill. Dkt. Ord. Apr. 12, 2012.) On April 3, 2012, with the consent of all other Defendants, Microsoft removed this action to the District Court for the Central District of Illinois pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446.

On April 25 and 26, 2012, all Defendants moved to dismiss Nieman's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In addition, on April 26, 2012, Defendants Yahoo! and Microsoft answered certain claims and simultaneously moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on all counts directed to them except the Lanham Act claim in Count VII.

On June 13, 2012, Magistrate Judge David G. Bernthal issued a Report and Recommendation, in which he recommended that the District Court dismiss

3

Nieman's Second Amended Complaint in its entirety based on Nieman's failure to
state a claim, the First Amendment, and Section 230 of the Communications
Decency Act. On June 14, 2012, Nieman filed his objection to the Magistrate Judge's
Report and Recommendation, and on June 28, 2012, Defendants Yahoo! and
Microsoft responded.

On August 3, 2012, the District Court granted the Defendants' motions to
dismiss and/or motions for judgment on the pleadings, dismissing Nieman's Second
Amended Complaint in its entirety with prejudice, reasoning that Defendants'
publication of records from Nieman's prior lawsuit was privileged under the First
Amendment and that he otherwise failed to state a claim. The same day, Nieman
filed a notice appealing the dismissal of his claims.

## STATEMENT OF FACTS[2]

Nieman is an insurance claims professional in Springfield, Illinois. (Compl.
¶¶ 7, 13.)[3] In November 2009, Nieman filed a lawsuit in Illinois against his former
employer, Nationwide Mutual Insurance Company ("Nationwide"), and "several
related defendants" due to "discrimination and/or retaliation that Plaintiff alleged
he suffered at the hands of the defendants." (Compl. ¶14.) He also filed collateral
discovery proceedings in Oklahoma and Colorado. (Compl. ¶ 14.) Between January
2009 and the date Nieman filed this lawsuit, he "applied for one or more positions of

---

[2] Nieman's Statement of Facts primarily consists of argument and does not contain
citations to the record, in violation of Fed. R. App. P. 28(a)(7) and Circuit Rule 28(c).

[3] References to the Complaint or "Compl." are to the Second Amended Complaint,
which Magistrate Judge Bernthal ruled was the operative complaint. (C.D. Ill. Dkt.
Ord. Apr. 12, 2012.)

employment." (Compl. ¶ 16.) Nieman alleges that in January 2009, when he typed

his name into Google, Yahoo!, and Microsoft's Bing search engines, he discovered

links to documents from his lawsuits, including pleadings and orders. (Compl. ¶ 15.)

Nieman suspects that potential (unidentified) employers learned about this prior

litigation online and "blacklisted" him from employment opportunities because, in

Nieman's view, he was "obviously the most qualified person for the position."

(Compl. ¶¶ 16-17.)

 According to the Complaint, in late 2011, links to the documents from

Nieman's prior lawsuits remained prominently ranked in search engine results.

Nieman alleges that he asked websites that provided access to the court documents,

including VersusLaw, to delink his cases from online search engines Google, Yahoo!,

and Bing. (Compl. ¶¶ 18, 20.) VersusLaw is an online service that, for a fee,

provides the public with access to court cases.[4] (Compl. ¶¶ 8, 15.) According to

Nieman, VersusLaw "secures case information and related documents by way of

sites such as PACER and then mirror[s] it on to the internet by way of [its] site[]

and server[]." (Compl. ¶ 15.) Although many of the sites that Nieman contacted

allegedly agreed to delink, VersusLaw denied Nieman's request. (Compl. ¶ 20.)

VersusLaw allegedly stated that it would only block links if the subject files were

sealed or by court order. (*Id.*) Nieman also alleges that he asked Google, Yahoo!, and

Microsoft to remove links to his prior lawsuits from search results associated with

his name, but they declined as well. (Compl. ¶¶ 20-21.)

---

[4] The Complaint alleges that Acton is president of VersusLaw. (Compl. ¶ 9.)

After Nieman's informal requests seeking removal of the links failed, on February 2, 2012, Nieman "dual-filed" discrimination charges against Defendants with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). (Compl. ¶ 4, Ex. A-1.) On February 6, 2012, the EEOC determined that Nieman did not have an "employer/employee relationship" with Defendants and issued a "right to sue" letter. (Compl. ¶ 5.) On February 10, 2012, Nieman asked IDHR to accept the EEOC's conclusion. (Compl. ¶ 6.) The status of that request is not in the record. Nieman subsequently filed this suit.

## STANDARD OF REVIEW

The District Court dismissed this action pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). (D. Ct. Op. at 27-28.) In order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasizing that facial plausibility requires a plaintiff to plead "enough details about the subject-matter of the case to present a story that holds together"). The pleading standard set forth in Federal Rule of Civil Procedure 8 does not require detailed factual allegations, but it demands more than unadorned accusations. *Iqbal*, 556 U.S. at 677-78. Accordingly, a complaint must be dismissed if its

allegations are "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Although a court considering a motion to dismiss must treat well pleaded allegations as true, it is not required to accept conclusory allegations. *Iqbal*, 556 U.S. at 678. Motions under Federal Rule of Civil Procedure 12(c) are reviewed "under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). Thus, a motion brought under Rule 12(c) should be granted if it appears beyond a doubt that a plaintiff cannot prove any facts that would support the plaintiff's claim for relief. *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).

This Court reviews the grant of 12(b)(6) and 12(c) motions *de novo. Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 620 (7th Cir. 2012); *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005). Based on these standards, this Court should affirm the District Court's decision to dismiss Nieman's Complaint in its entirety with prejudice.

## SUMMARY OF THE ARGUMENT

This Court should affirm the dismissal of Nieman's Complaint with prejudice because it suffers from three irreparable defects. First, Nieman seeks to impose civil liability for Defendants' publication or dissemination of public court documents in direct contravention of the First Amendment. Holding websites (or their executives) liable for making public records accessible would impermissibly chill speech on matters of public interest.

Second, Nieman fails to state any claim upon which relief could be granted. Nieman's fundamental complaint is that web searches of his name yield results that include documents from his prior lawsuit against his former employer. Despite his creative attempt to shoehorn these facts into legal theories ranging from commercial misappropriation and unjust enrichment, to federal civil rights violations and RICO violations, Nieman does not—and cannot—state a viable claim.

Third, most of Nieman's claims are independently barred by Section 230 of the Communications Decency Act, which protects providers of interactive computer services from liability arising from the publication of content created by others. Here, Nieman seeks to hold Defendants liable because they facilitated online access to documents that were generated by the court and parties in prior litigation, a theory of liability that is plainly prohibited by Section 230.

## ARGUMENT

### I.     Defendants' Conduct Is Protected Under the First Amendment

Nieman's claims are designed to frustrate Defendants' First Amendment right to make court records available to the public. There is no dispute that any member of the public can obtain the records associated with Nieman's prior litigation from the court files, and the federal courts have made these records available online via PACER, as Nieman acknowledges in his Complaint. (Compl. ¶ 15.) Defendants are simply providing additional ways to access these records. The public's right to inspect public court records is well-established under the First Amendment. The Defendants' ability to make such records available to the public is no less important. Accordingly, the First Amendment bars Nieman's claims against

Defendants, and this Court should affirm the decision of the District Court dismissing the Complaint.

### A.    Publication of Matters in the Public Record Is Protected by the First Amendment

The public's right of access to court proceedings and documents is well-established. *Grove Fresh Distribs., Inc., v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994). Justified originally by common-law traditions predating the enactment of the U.S. Constitution, the right of access belonging to the press and the general public also has a First Amendment basis. *Id.* "Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Id.*; *see also Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 231-32 (2000) (finding that the First Amendment presumes public access to court records).

Although Nieman may have considered his dispute with his former employer to be private, once he initiated litigation in the court system, he relinquished any expectation of privacy. Simply put, there can be no private interest in information in the public record. *Fla. Star v. B.J.F.*, 491 U.S. 524, 532 n.7 (1989) (relying on *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975)). Accordingly, Nieman's speculation about how potential employers might use the information is irrelevant because Defendants' dissemination of information contained in court documents is privileged, "even if publication would offend the sensibilities of a reasonable person." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993). Moreover, First Amendment protection does not vanish simply because VersusLaw

sells access to documents from the public case files. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420 (1993) ("Speech likewise is protected even though it is carried in a form that is 'sold' for profit.").

Nieman argues that, because the court documents reflect what he considers "protected conduct" (*i.e.*, instituting employment discrimination litigation), he is entitled to litigate his claims without public scrutiny. (*See*, *e.g.*, Pl. Br. at 13-15, 18, 21, 23.) On the contrary, the First Amendment protects the public's right to access all documents connected with a judicial proceeding; Nieman cannot pick and choose which documents should be available. *See United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989). Although Nieman may believe that there is no valid social interest to protect, (Pl. Br. at 19, 20, 37), court documents "belong to the public, which underwrites the judicial system that produces them." *See also PepsiCo, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995). Access promotes transparency of government. *See Grove Fresh Distribs.*, 24 F.3d at 897 (scrutiny of the court system permits, *inter alia*, public discovery of accurate facts).

Further, Nieman erroneously argues that VersusLaw cannot make its case information available to internet search engines operated by Google, Yahoo!, and Bing. (Pl. Br. at 24; *see* Pl. Br. at 13-14, 20, 23.) Nieman cannot dictate the manner in which court records are made available. It is senseless to allow access to public records but to punish those who facilitate that access. This would inevitably create a chilling effect on speech given the vast number of people who use Defendants' websites to obtain information about public proceedings. *See Cox Broad. Corp.*, 420

U.S. at 495-96 (holding that the media was not liable for publication of a rape victim's name obtained from the public record; "[i]n this instance[,] *as in others*[,] reliance must rest upon the judgment of those who decide what to publish or broadcast") (emphasis supplied). Accordingly, Defendants are not prohibited from providing information about Nieman's cases through internet search results.[5]

### B.     Defendants Are Protected by the First Amendment, Even if Employers or Potential Employers Discover Information About Nieman Online

Because Defendants are properly exercising their First Amendment rights, how others use that information has no bearing on whether Nieman can maintain claims against Defendants.[6] Therefore, Nieman's allegations that he believes that potential employers (none of which is a Defendant here) improperly used publicly available information discovered using Defendants' services to deny him jobs, (Pl. Br. at 14-15), have no bearing on VersusLaw's right to make case law search results accessible to Google, Yahoo!, and Bing or on the right of the search engine Defendants to link to VersusLaw or other sources that may provide access to information about Nieman's prior litigation. Nieman has not and cannot cite legal authority to support his theory that Defendants are liable for the independent decisions of Nieman's prospective employers whose lawful access to public records the Defendants may have facilitated.

---

[5] Nieman's assertion that Defendants "conspired" to move his cases up in the internet search results has no merit. (Compl. ¶¶ 18, 60, 66.) Ranking search results is protected speech. *See Search King, Inc. v. Google Tech., Inc.*, No. CIV-02-1457-M, 2003 WL 21464568, at *4 (W.D. Okla. May 27, 2003).

[6] He cannot for the reasons explained *infra* in Section II.F, pp. 24-26.

As Nieman knows, he is not without legal recourse. *See, e.g., Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 908, 913 (C.D. Ill. 2010) (describing claims Nieman filed against his employer, including, *inter alia*, employment discrimination and retaliatory discharge). He may pursue valid claims (to the extent he has them) against his potential employers. *See* 42 U.S.C. § 2000e-3 (a) (prohibiting retaliation when a current or potential employee litigates an employment matter). Nieman has no basis, however, to pursue claims against unrelated third parties like Defendants, who have no knowledge of or involvement in the alleged blacklisting.[7]

### C.   The Law Regarding Publication of *Private* Information Does Not Apply to Publication of *Public* Information

Citing the *Haynes* decision, the District Court aptly recognized that the First Amendment creates a privilege to publish matters contained in the public record. (D. Ct. Op. at 22-23; Rep. & Rec. at 4.) *See Haynes*, 8 F.3d at 1231-32H.  In *Haynes*, the court had to determine whether the defendant could publish personal facts in a book because "the primary source of the allegedly humiliating personal facts [was] *not a public record.*" *Haynes*, 8 F.3d at 1232 (emphasis supplied). The court *then* reviewed the newsworthiness and offensiveness of the material in question to determine whether plaintiff had a right to privacy. *Id.* This inquiry was critical

---

[7] Although both the First Amendment and the common law presume the public's right of access to court records, *Grove Fresh Distribs.*, 24 F.3d at 897, if Nieman felt his interest in keeping the records private outweighed the public's interest, he could have petitioned the trial courts to seal the documents in his cases. *Id.* Courts have the discretion to seal court records if they think the information will be used improperly. *Id.*; *see also* Fed. R. Civ. P. 5.2 (setting forth procedures to redact records in federal court).

because even the publication "of highly personal information that is not in a record open to public inspection is privileged if there is a public interest in access to the information." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010) (citing *Bartnicki v. Vopper*, 532 U.S. 514, 534-35 (2001) and *Haynes*, 8 F.3d at 1231-35). Here, in stark contrast, all of the information disseminated by Defendants is already in the public record. Therefore, it is irrelevant whether this information is newsworthy or offensive (and Nieman has never alleged that information about his lawsuit against his former employer is highly personal and offensive).

## II. The District Court Correctly Ruled That Each Count Of The Second Amended Complaint Failed To State A Claim Upon Which Relief May Be Granted

### A. Counts I and III, Alleging Claims Under the Illinois Human Rights Act, Were Properly Dismissed[8]

The gist of Nieman's claims under the Illinois Human Rights Act, 775 ILCS 5/6-101(A) and (B) ("HRA"), is that the Defendants acted to

> aid and/or abet those who would seek to retaliate or discriminate against the Plaintiff for taking part in protected employment activities, and that their continuing refusal to remove such references [to his prior lawsuit against his former employer] or links constitute retaliation as to his prior protected conduct.

(Compl. ¶¶ 25, 35.) Nieman's allegations cannot establish a *prima facie* case of retaliation because Nieman cannot demonstrate, as he must, that he was engaged in protected activity, that his employer committed a materially adverse action against him, or that a causal connection exists between the alleged protected

---

[8] Count I was asserted against VersusLaw and Acton and Count III against Google, Microsoft, and Yahoo!.

activity and the alleged adverse act. *See, e.g., Hoffelt v. Ill. Dep't of Human Rights*, 367 Ill. App. 3d 628, 634 (1st Dist. 2006). Plainly, one cannot violate the HRA merely by providing links to public court records concerning an individual's litigation against a former employer. (D. Ct. Op. at 10.) Moreover, none of the Defendants is alleged to have been Nieman's employer or prospective employer, and Defendants' conduct in declining to remove the links does not constitute an adverse employment action.[9]

Nieman argues that relevant jurisprudence construes the term "retaliation" broadly and suggests that Defendants' conduct meets that definition.[10] Even assuming that disseminating public court records could ever amount to retaliation, unlike here, the cases Nieman cites involved an employment relationship between the plaintiff and the defendant. Nieman concedes that none of the Defendants was his employer—or potential employer. Accordingly, none of the Defendants could have adversely affected his employment in retaliation for any alleged protected

---

[9] This claim must also be dismissed because Nieman failed to exhaust his administrative remedies. *See* 775 ILCS 5/7A-102(G)(2); *Anderson v. Centers for New Horizons*, No. 11 C 9233, 2012 WL 2396359, at *2 (N.D. Ill. June 25, 2012) ("[A] right to sue letter from the EEOC does not serve as a substitute for a final order from the [IDHR] . . . . Because 365 days have not passed since plaintiff filed her charge, 775 ILCS 5/7A-102(G)(2), she cannot initiate a lawsuit without a final order from the IDHR.") (internal citations and quotation marks omitted).

[10] Nieman also argues that *Hoffelt* is no longer good law because the HRA was subsequently amended to allow complainants the additional option of filing suit in state court rather than maintaining jurisdiction within the Human Rights Commission. This argument ignores the salient fact that there was no substantive change to the elements of retaliation or aiding and abetting claims by virtue of this procedural change.

14

conduct, regardless of how broadly the term "retaliate" is construed. Nieman's concession demonstrates the frivolity of his claims.

Nieman next argues that the District Court was wrong because the retaliation and aid and abet provisions are not limited to employers or prospective employers. However, the two cases he cites, *United States Equal Employment Opportunity Commission v. City of Evanston*, 854 F. Supp. 534 (N.D. Ill. 1994), and *Dorado v. Aargus Security Systems, Inc.*, Case No. 00 C 4002, 2002 WL 230776 (N.D. Ill. Feb. 14, 2002), are inapposite. The issue in *City of Evanston* was whether the eligibility requirements for firefighters' pensions violated the Age Discrimination in Employment Act ("ADEA"). The firefighters were employed by the City of Evanston, but the eligibility criteria for their pension were set by the State pursuant to statute. The State filed a motion to dismiss, arguing that the court lacked subject matter jurisdiction because the State was not the firefighters' "employer" under the ADEA. The court rejected that argument. Instead, the court concluded that the pertinent inquiry was whether the State's conduct unlawfully interfered with the plaintiff's access to employment benefits. *City of Evanston*, 854 F. Supp. at 538. Given that the Illinois statute required Evanston to establish and maintain a pension funded by the State, and that the State set the eligibility criteria, the complaint adequately supported the interference element.

In stark contrast, here, Nieman cannot allege that Defendants interfered, or even had the ability to interfere, with the conditions of Nieman's employment or prospective employment. Defendants had no control over Nieman's employment

opportunities or benefits. Nieman's speculation "that one or more persons with influence as to the hiring of such [insurance] positions have completed internet browser searches by way of Google.com, Yahoo.com, or Bing.com and have identified the Plaintiff's prior protected conduct" and his "belief that one or more of these persons used this information to disqualify him from candidacy for the applied for position," (Compl. ¶ 16), fall far short of the standard for pleading a viable retaliation claim against Defendants and, even if true, this would not support a retaliation claim against these Defendants.

Nor does *Dorado* advance Nieman's cause. The plaintiff in that case was a site supervisor for a commercial building. Several years after his employment commenced, a new property management company, Lincoln, took over the property management functions, while another company, Aargus, assumed security management functions. Aargus became the plaintiff's employer. One of Lincoln's agents, Sherri Green, began making racially derogatory statements about plaintiff (who was black) and preparing disciplinary reports because the plaintiff had a personal, romantic relationship with one of the white female employees in the building. Plaintiff's employment was terminated when Green informed Aargus that plaintiff had asked a building tenant for a loan, and she asked Aargus to fire plaintiff. Under these circumstances, the court concluded that there were sufficient allegations that Lincoln, through Green, actively encouraged Aargus to fire plaintiff. *Dorado*, 2002 WL 230776, at *8. Here, by contrast, Nieman does not allege that Defendants even knew of, let alone interfered with, his job search. In short,

16

this Court should affirm the District Court's ruling that Nieman cannot allege a

viable claim under the Illinois Human Rights Act against any of the Defendants.

### B.   Counts II And IV Fail to State a Commercial Misappropriation Claim[11]

Nieman alleges, in conclusory fashion, that "Defendants were

misappropriating his identity for commercial purposes in violation of Illinois

common law." (Compl. ¶¶ 29, 38.) More specifically, Nieman suggests that

Defendants have misappropriated his identity because

> any time the Plaintiff's common name is entered into one of the
> various Defendants search engine [*sic*] (Google, Yahoo, or Bing), a link
> will prominently appear as to Defendant Versuslaw's [*sic*] sites
> ([v]ersuslaw.com or [f]indacase.com) [and] when the link is triggered
> the searching party is taken to a page where the beginning of the item
> or page is listed, along with a button to 'buy' a copy of the case for
> $4.95.

(Compl. ¶ 29.)[12]

The District Court pointed out that the Illinois Right of Publicity Act, 765

ILCS 1075/60 ("IRPA"), has supplanted the common law commercial

misappropriation claim and ruled that the conduct at issue was lawful because it is

---

[11] As with Counts I and III, Nieman asserted Count II against VersusLaw and
Acton and Count IV against Google, Microsoft, and Yahoo!.

[12] Nieman expressly alleges that "Plaintiff relied upon *Schivarelli and D.H. Stands
LLC v. CBS, Inc., et al.* [333 Ill. App. 3d 755] IL 1st Dist. 8/16/2002 in his assertion
against Defendants." (Compl. ¶ 38.) Yet, Nieman does not cite this case in his brief,
and with good reason. That case was brought under the IRPA (not the common
law), and the court held that a commercial misappropriation claim, based on a
promotional television announcement of an investigative news report for channel 2,
was not commercial and therefore precluded by the IRPA. *Schivarelli v. CBS, Inc.*,
333 Ill. App. 3d 755, 764-65 (1st Dist. 2002).

exempt under the IRPA. The IRPA protects an individual's right to consent to the

use of his identity for a commercial purpose. It defines "commercial purpose" as

> the public use or holding out of an individual's identity (i) on or in
> connection with the offering for sale or sale of a product, merchandise,
> goods or services; (ii) for purposes of advertising or promoting products
> merchandise, goods or services; or (iii) for the purpose of fundraising.

765 ILCS 1075/5. The IRPA expressly exempts the use of an individual's identity for

"non-commercial purposes, including any news, public affairs or sports broadcast or

account, or any political campaign." 765 ILCS 1075/35(b)(2).

The District Court correctly determined that the conduct alleged was exempt

because Nieman's name was used for a noncommercial purpose. His prior litigation

was a matter of public record and public interest, and his identity was used only to

find documents related to his lawsuit and not to sell a product. (D. Ct. Op. at 12-13.)

A search engine does not use a person's name for commercial purposes when it

simply reports information found on internet websites. *Stayart v. Google Inc.*, 783 F.

Supp. 2d 1055, 1057 (E.D. Wis. 2011) (citing *Zacchini v. Scripps-Howard Broad.*

*Co.*, 433 U.S. 562, 574 (1977). Moreover, Illinois courts have read the

noncommercial exemption broadly. For example, in *Best v. Berard*, 776 F. Supp. 2d

752 (N.D. Ill. 2011), a television show that was an "entertainment program" that

truthfully conveyed information about plaintiff's arrest was exempt from an IRPA

claim under the rubric of "public affairs." 776 F. Supp. 2d at 759. [13] If the activity in

---

[13] *See also Snyder v. Phelps*, __ U.S. __, 131 S. Ct. 1207, 1215 (2011) ("Speech on
matters of public concern . . . is at the heart of the First Amendment's
protection . . . ." Such speech "occupies the highest rung of the hierarchy of First

*Best* was for a "noncommercial purpose," the activity here—providing access to truthful information about a lawsuit that is in the public record—cannot be commercial under the IRPA.

Additionally, Nieman's commercial misappropriation claim should be dismissed because it is time barred. Whether his claims are based on the common law or the IRPA, the applicable statute of limitations is one year. *Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 322-23 (2d Dist. 2006). According to Nieman, the alleged misconduct began "[i]n approximately January of 2009, [when] the Plaintiff discovered that certain Internet websites were linking copies of information related to the litigation to his common name . . . . " (Compl. ¶ 15.) Yet, Nieman's lawsuit was not filed until February 29, 2012, more than three years later. For this reason, too, the dismissal of his commercial misappropriation claim must be affirmed. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (recognizing that court of appeals can affirm a district court's decision on any basis supported by the record, whether or not it was relied upon by the district court), *cert. denied*, 132 S. Ct. 1141 (2012).

## C. Nieman's Section 1981 Claims in Counts V and VI Are Fatally Deficient[14]

Nieman asserts that Defendants violated Section 1981 because

Plaintiff's prior protected conduct included aspects and allegations related to The Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981,

---

Amendment values, and is entitled to special protection.") (internal citation and quotation marks omitted).

[14] The Section 1981 claim was asserted against VersusLaw and Acton in Count V and against Google, Microsoft, and Yahoo! in Count VI.

and as the alleged retaliation is and/or has been related to such
conduct under that statute, the Defendants retaliatory conduct is also
prohibited by, and actionable under, 42 U.S.C. § 1981.

(Compl. ¶¶42, 45.) Through these conclusory and nearly incomprehensible

allegations, it appears that Nieman seeks to plead his HRA retaliation claim as a

federal claim, but he fails to allege that the claimed retaliation occurred in the

context of enforcing the right to make or enforce a contract on the same basis as

white citizens. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008).

The District Court quickly dispensed with Nieman's § 1981 claim, correctly

noting that Nieman failed to allege anything about race or about making or

enforcing a contract. (D. Ct. Op. at 13-14.) The mere fact that Nieman's prior

lawsuit against his former employer may have included a § 1981 claim does not

support a claim that Defendants, who simply disseminated public information about

Nieman's prior lawsuit, have engaged in retaliatory conduct under Section 1981.

Thus, this Court should affirm the dismissal of Counts V and VI.

### D.    Count VII, Brought Under the Lanham Act, Does Not State A Claim

Nieman's Lanham Act claim is premised on his incorrect legal conclusion that

he "enjoys a substantial property interest in his name . . . [which] is only expected to

grow in the future as his skills, education and credentials continue to expand

positively." (Compl. ¶ 48.) Although Nieman did not specify the section of the

Lanham Act, 15 U.S.C. §§ 1051-1072, that Defendants allegedly violated, a more

fundamental defect forecloses his claim. He does not have a commercial interest in

his name and therefore lacks standing. (D. Ct. Op. at 15.) Notably, Nieman fails to

provide any basis on which he may assert a Lanham Act claim other than his unsuccessful attempt to distinguish *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 439 (7th Cir. 2010).

In *Stayart*, the Seventh Circuit held that the Lanham Act "is a private remedy for a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor." *Id.* at 439 (internal citations and quotation marks omitted). "Before a plaintiff may assert a claim under the § 43(a) of the Lanham Act, []he must have a commercial interest to protect." *Id.* at 438. The court below pointed out that in *Stayart*, the Seventh Circuit rejected the plaintiff's argument that she had a commercial interest in her name. Stayart, like Nieman, complained about information about her on links to third party websites when her name was used as a search term. *Id.* at 437-38. She, like Nieman, argued that she has a commercial interest in her individual reputation. *Id.* at 438. However, the Court held that the Lanham Act did not protect such an interest. *Id.* at 440. (*See also* D. Ct. Op. at 16.)

Additionally, the Complaint fails to pinpoint any infringing use in commerce, an essential element of a Lanham Act claim. For example, under both 15 U.S.C. §§ 1114(1) and 1125(a), the complaint must allege that the defendant's use in commerce is likely to cause confusion, mistake, or deceive consumers. *See*, *e.g.*, *Packman v. Chi. Tribune Co.*, 267 F.3d 628 (7th Cir. 2001). The Lanham Act defines "use in commerce" in the context of services, as when the service mark "is used or displayed in the sale or advertising of services" and the services are rendered in

commerce. 15 U.S.C. § 1127; *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 881 (N.D. Ill. 2008). Here, Nieman has not alleged that his name is (a) a trademark or service mark, (b) which was used or displayed in the sale or advertising of services, and (c) that such services were rendered in commerce. Further, it is plainly implausible that consumers would mistakenly believe, based on any of the Defendants' search results, that Nieman endorses VersusLaw or any other website simply because his name appears in the caption of a legal pleading published by that website. As such, this Court should affirm the dismissal of Count VII of Nieman's Complaint.

### E.    Count VIII, Alleging Intentional Interference with Prospective Advantage, Is Legally Insufficient

Nieman's tortious interference claim is predicated on a report by Cross Tab indicating that "approximately 75% of hiring managers and/or HR staff/recruiters use the internet as part of their review for candidates and/or applicants for promotion and/or employment . . . [and] by far the most common method of research is the common browser or search engine" such as Bing, Google, and Yahoo!. (Compl. ¶ 54.) Nieman speculates that he was "blacklisted" based on the availability of information about his prior lawsuit through Defendants' websites, and Defendants should have been able to "anticipate these adverse employment actions," (Compl. ¶ 55), that he believes were taken by prospective third party employers.  Nieman's claim fails, however, because he cannot establish any of the elements of a claim for tortious interference.

A claim for tortious interference with prospective economic advantage must allege (1) the existence of a valid business relationship or expectancy; (2) the defendants' knowledge of plaintiff's relationship or expectancy; (3) an intentional or unjustified interference by defendants inducing or causing a breach of termination of the expectancy; and (4) damages. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07 (1996). And, as the District Court noted, "[a] plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1020 (1st Dist. 2005); (D. Ct. Op. at 16.)

Nieman cites no case law in his brief on this Count and concedes that this claim is the "most challenging." (Pl. Br. at 37.) That is an understatement, given that he cannot establish any of the elements of this claim. Nieman falters at the first step. He did not and cannot show a valid business expectancy. "The hope of receiving a job offer is not a sufficient expectancy." *Vanden Dorpel*, 172 Ill. 2d at 408. *See also Werblood v. Columbia Coll.*, 180 Ill. App. 3d 967 (1st Dist. 1989) (plaintiff's expectation that her employment contract would be renewed did not support a tortious interference claim even though the college assured her that her employment was secure); *Buchanon v. Serbin Fashions, Inc.*, 698 F. Supp. 731, 734 (N.D. Ill. 1988) (a plaintiff's subjective hope of receiving a job offer is not a sufficient expectancy).

23

Nieman also did not satisfy the second element because he did not allege, as he must, that Defendants had knowledge of his claimed business expectancy. In addition, the District Court correctly held that Nieman failed to allege the third element, an intentional and unjustified interference that caused a breach or termination of a business relationship or expectancy. Nor could he: publishing truthful information does not support a tortious interference claim as a matter of law. *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 301 (2001) ("those [credit] reports were accurate and proper, and therefore they cannot represent an unjustified interference with the plaintiff's prospective business expectancy"). Further, Nieman has not and cannot demonstrate intentional conduct where, as here, these were computer searches and Defendants were not personally involved in the hiring or selection process used by third party prospective employers.

For any or all of these reasons, this claim was properly dismissed, and this Court should affirm the District Court's decision.

## F. The Unjust Enrichment/Civil Conspiracy Allegations Do Not State Viable Claims

According to the allegations in Count IX, "Defendants have acted individually, and/or in concert, by the actions of two or more persons in conspiracy as to their actions." (Compl. ¶ 59.) Count IX also alleges that Defendants "have sought, and/or received, unjust monetary reward directly related to their improper and unlawful actions." (Compl. ¶ 60.) Nieman's three sentence "argument" in support of this hybrid claim fails to demonstrate the sufficiency of these allegations.

This Court should therefore affirm the District Court's dismissal of Count IX. (Pl. Br. at 37-38.)

An unjust enrichment claim requires allegations that a defendant unjustly retained a benefit to the plaintiff's detriment and that the retention of this benefit violates the fundamental principles of justice, equity and good conscience. *A.P. Props., Inc. v. Rattner*, 2011 IL App (2d) 110061, ¶ 11. "[F]or a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025 (3d Dist. 2009). The District Court correctly held that Nieman could not state a claim because there was no independent basis that established that Defendants had any duty to act. (D. Ct. Op. at 20.) In addition, as the District Court correctly noted, Defendants were not "retaining a benefit" by providing electronic access to publicly available information about Nieman's prior lawsuit to the public.

Nieman's conspiracy claim fares no better. A civil conspiracy under Illinois law requires "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923 (1st Dist. 2007) (internal citation and quotation marks omitted). Further, "the mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Id.* (internal citation

and quotation marks omitted). Instead, the complaint must contain "more than the conclusion that there was a conspiracy, it must allege specific facts from which the conspiracy may be properly inferred. *Id.* at 925 (internal citation and quotation marks omitted). A conspiracy is not an independent tort. *Indeck N. Am. Power Fund v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (1st Dist. 2000). If the plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails. *Id.*

Even if Defendants were paid to provide access to information about Nieman's prior lawsuit, this activity is lawful and thus cannot form the basis of a conspiracy claim. The District Court correctly reasoned that Nieman's allegations "fall short" of establishing that Defendants "worked together to accomplish an action that had an unlawful purpose or a lawful purpose by unlawful means in furtherance of which one of the conspirators committed an overt tortious or unlawful act." (D. Ct. Op. at 20-21.) Accordingly, this Court should affirm the dismissal of Count IX.

### G.    Count X, the Alleged RICO Claim, Fails to State a Claim upon Which Relief May Be Granted

According to the Complaint,

> Versuslaw, Inc. [*sic*] and Acton specifically have operated as an unlawful enterprise seeking to monetize the unlawful activity of highlighting or publicizing evidence of protected employment conduct by Plaintiff and others similarly situated . . . [and] the search engine Defendants have manipulated search results by way of mechanism such as paid search, paid ranking, and/or 'Ad/Words' programs to assist the Versuslaw [*sic*] Defendants in their unlawful enterprise.

(Compl. ¶ 66.) To support his claim that Defendants violated RICO Section 1961, Nieman must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). As with his other counts, Count X is based on legal conclusions—not facts. For this reason alone, it was properly dismissed.

Moreover, only the racketeering activities identified in § 1961(1) can serve as predicate offenses for a RICO violation. *See*, *e.g.*, *Meier v. Musburger*, 588 F. Supp. 2d 883, 911 (N.D. Ill. 2008). There is no predicate offense that criminalizes linking to or otherwise disseminating public legal documents. To the contrary, the Supreme Court clearly stated that there can be no violation of the law based on the accurate publication of information that is obtained from public records and is available for public inspection. *Cox Broad. Corp.*, 420 U.S. at 495-96. The District Court properly concluded that the Complaint failed to allege that Defendants were involved in racketeering activity as defined by 18 U.S.C. § 1961 or that they engaged in any of the prohibited activities enumerated in 18 U.S.C. § 1962. (D. Ct. Op. at 21.) [15] This Court should therefore affirm the dismissal of Count X.

---

[15] Defendants raised additional, independent reasons why the RICO claim should be dismissed that the District Court below did not reach, including, but not limited to, Nieman's failure to allege an injury to his business or property required under 18 U.C.C. § 1964(c) and his failure to allege a RICO enterprise. Nieman's request for damages for depression, humiliation, anguish, and emotional distress do not constitute RICO damages as a matter of law, and therefore his RICO claim must be dismissed. *See*, *e.g.*, *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990). This Count should also be dismissed because Nieman failed to plead facts to support a RICO enterprise. A RICO enterprise requires proof of "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond v. Nationwide*

### III. Section 230 Of The Communications Decency Act Provides An Alternate Basis For Affirming Dismissal Of Most Of Nieman's Claims

Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1),

("Section 230"), provides an independent basis for dismissing all of Nieman's claims

except his Lanham Act claim, Count VII (which he cannot pursue because, as a

matter of law, he lacks standing).[16] Contrary to Nieman's assertion, Defendants

acknowledge that this Circuit has taken a more restrictive view of the protections

afforded by Section 230 than other Circuits. *Compare Chi. Lawyers' Comm. for Civil*

*Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008) (noting

that Section 230 does not refer to immunity and is not a general prohibition of civil

liability for website operators), *with Zeran v. AOL*, 129 F.3d 327, 331 (4th Cir. 1997)

(emphasizing that Congress "chose to immunize service providers" to avoid

restricting internet speech). Regardless, even under this Circuit's more rigid

standard, Defendants qualify for the protection conferred by Section 230.[17]

---

*Cassel L.P.,* 52 F.3d 640, 644 (7th Cir. 1995 (internal citation and quotation marks omitted).

[16] *See supra* Section II.D, pp. 20-22.

[17] This Circuit has held that Section 230 provides an affirmative defense and therefore should be raised via a motion for judgment on the pleadings. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). In this case, Defendants Microsoft and Yahoo! moved to dismiss Nieman's claims under Rule 12(b)(6) and separately moved for judgment on the pleadings on the claims subject to a Section 230 defense. The other Defendants cited Section 230 as a basis for dismissing Nieman's claims without leave to amend because Section 230 would render amendment of those claims futile. *See*, *e.g.*, *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (emphasizing that district courts have broad discretion to deny leave to amend where amendment would be futile).

Section 230 protects interactive computer service providers against liability arising from "publishing" third party content. *See, e.g., Chi. Lawyers' Comm.*, 519 F.3d at 668 (affirming judgment on the pleadings for website that displayed discriminatory housing ads posted by third parties). It directs that "[n]o provider or user of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(c)(1) applies whenever three elements are satisfied: (1) the defendant is "a provider . . . of an interactive computer service"; (2) the plaintiff's claims seek to "treat[]" the defendant as the "publisher or speaker" of allegedly harmful or unlawful information; and (3) the information at issue was "provided by another information content provider." 47 U.S.C. § 230(c)(1). The District Court properly concluded below that Section 230 applies to most of Nieman's claims in this case and thus provides an additional, independent basis for affirming their dismissal.

### A.     Defendants Are Providers of Interactive Computer Services

The court below correctly found that the Defendants meet the definition of an interactive computer service. (Rep. & Rec. at 6; D. Ct. Op. at 24-25.) Section 230 defines an "interactive computer service" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts construe the term interactive computer service broadly and have repeatedly held that search engines meet the statutory definition. *See Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 884 (E.D. Wis. 2009) (concluding that Yahoo! search engine is an interactive computer

29

service), *aff'd*, 623 F.3d 436 (7th Cir. 2010); *see also Jurin v. Google Inc.*, 695 F.

Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (concluding that Google search engine is an

interactive computer service); *Parker v. Google Inc.*, 422 F. Supp. 2d 492, 501 (E.D.

Pa. 2006) (same); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007)

(concluding that Ask.com search engine is an interactive computer service).

VersusLaw also qualifies as a provider of an interactive computer service

because, as Nieman alleges, it runs interactive websites at findacase.com and

versuslaw.com, which interlink to search engines and make public court records

from sites like PACER available to their users. (Compl. ¶¶ 8, 15.)[18] In short, all of

the Defendants satisfy the statutory definition of interactive computer service

providers because they provide information systems or services that enable

computer access by multiple users to a computer server. *See* 47 U.S.C. § 230(f)(2).

**B.     The Allegedly Harmful Content Was Created by Third Parties**

Further, Nieman's claims are subject to Section 230 because the allegedly

unlawful content that is the subject of his lawsuit—namely, filings and rulings

relating to prior litigation Nieman filed against former employer(s) that are

accessible via Defendants' websites—constitutes "information provided by another

information content provider." 47 U.S.C. § 230(c)(1). This Circuit has observed that

online services are like common carriers in some respects because they do not create

the content that may pass over their networks. *Chi. Lawyers' Comm.*, 519 F.3d at

---

[18] Although Acton individually is not an interactive computer service provider,
Nieman fails to allege any facts to support *any* theory of liability against Acton,
individually. Indeed, the only facts that Nieman alleges about Acton specifically are
in the context of his role at VersusLaw. (Compl. ¶¶ 9, 23, 26, 51, 60, 66.)

668 (affirming judgment on the pleadings for website that displayed discriminatory housing ads posted by third parties). The distinction between merely posting information provided by a third party and actually creating information is critical, and Nieman does not and cannot allege that the Defendants created the court documents of which he complains. Nevertheless, Nieman speculates that Defendants could be characterized as content providers for either manipulating search results or creating links to the public documents.

First, Nieman contends that Defendants became information content providers by "taking the Plaintiff's common name and linking it to [case information and orders from PACER]." (Pl. Br. at 24.) Similar arguments have been rejected by multiple courts. Even if mere linking could be equated to content creation, minimal contributions of "structure and content" to material generated by a third party will not support interactive computer service liability unless the service "created or developed the particular information at issue" in the case. *See, e.g., Carafano v. Metrosplash.com*, 339 F.3d 1119, 1125 (9th Cir. 2003). Here, the content for which Nieman seeks to impose liability is information created by Nieman and others about his prior lawsuits. *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833 n.11 (2002) (reasoning that computer service's involvement with website content is irrelevant unless the service created or developed the specific content for which a plaintiff seeks to hold it liable); *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 985-86 (10th Cir. 2000) (holding that AOL's design and promotion of a personal

31

finance channel on which erroneous stock data appeared did not destroy Section 230 protection where the erroneous data was supplied by a third party).

The *Stayart* decision also undermines Nieman's contention that linking to his name amounts to content creation. *See generally Stayart*, 651 F. Supp. 2d 873. Like Nieman, the *Stayart* plaintiff objected to search results associated with her name and sued Yahoo! for using her name online without authorization. *Id.* at 877. The court found that Yahoo! could not be liable because it merely provided search results linking to the third party content, and therefore did not create it. *Id.* at 885; *see generally Murawski*, 514 F. Supp. 2d 577 (concluding that Section 230 protected search engine against liability arising from search results linking plaintiff's name to Communist website).

Second, Nieman argues that the search engine Defendants are not protected by Section 230 because "there is some evidence of manipulation in ranking." (Pl. Br. at 24.) Nieman speculates that this manipulation must have occurred because the subject court records have remained near the top of the search engine's results for several years. (Pl. Br. at 28-29.) Even if Nieman's unsubstantiated speculation regarding search result manipulation were true, his claims would still be barred by Section 230. "Congress has made a . . . policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others." *See Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998). Accordingly, this Court should disregard Nieman's allegations that the search engine Defendants manipulated search results.

### C.     Nieman Seeks to Treat Defendants as Publishers

The allegations of Nieman's Complaint demonstrate that he seeks to treat Defendants as publishers of the court records that he does not want potential employers to find. Nieman claims that Defendants assisted potential violators of employment laws by disseminating these public legal documents. Indeed, Nieman specifically alleges that Defendants have harmed him by "*publicizing* the Plaintiff's protected conduct" and that they "improperly . . . *publicized* the Plaintiff's protected conduct in relation to the *Nieman v. Nationwide* matter." (Compl. ¶¶ 35, 59) (emphasis supplied). Holding Defendants liable for posting or linking to court records in this case would be analogous to holding an online bulletin board liable for content in third-party ads, which would be to treat them "in a capacity as publisher." *See Chi. Lawyers' Comm.*, 519 F.3d at 671. Thus, there can be no doubt that Nieman's claims seek to treat Defendants as publishers.

Nieman's argument that Defendants could choose to remove links that associate his common name with court records only proves that his claims are barred by Section 230. (Pl. Br. at 26-27.) As the Fourth Circuit has observed, any claim based on a computer service's alleged failure to "exercise . . . a publisher's traditional editorial functions," such as monitoring or screening other parties' transmissions or deciding whether to withdraw or delete content, necessarily treats the provider as a publisher of that information. *See Zeran*, 129 F.3d at 330. Section 230 precludes liability premised on an interactive computer service's failure to remove offending search results created by a third party. *See*, *e.g.*, *Stayart*, 651 F.

Supp. 2d at 885; *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *4

(E.D. Tex. Dec. 27, 2006) (same).

In *Stayart*, the court addressed whether Yahoo! could be held liable for failing

to act after the plaintiff requested that her name be disassociated with certain

websites she found offensive. *Stayart*, 651 F. Supp. 2d at 885-86. The court held

that:

> Even after receiving Stayart's complaints, Yahoo! cannot be held liable
> for failing to remove the offending search results . . . . Indeed, the only
> way Yahoo! could exert any control over the results of a search engine
> query would be to change its underlying, proprietary algorithm. This
> goes to the heart of Yahoo!'s role as an interactive computer service.

*Id.* at 885; *see also Murawski*, 514 F. Supp. 2d at 591 ("Nor can Ask.com be held

liable for failing to keep any alleged promise to remove [the content] . . . . Deciding

whether or not to remove content or deciding when to remove content falls squarely

within Ask.com's exercise of a publisher's traditional role and is therefore subject to

the CDA . . . ."). This Court should affirm the dismissal of Nieman's claims because

they seek to treat Defendants as the publishers or speakers of content created by

others in direct contravention of Section 230.

### D.     Whether a Defendant Earns Revenue from Third Party Content Has No Bearing on a Section 230 Analysis

Nieman's allegation that some or all of the Defendants have profited from the

publication or distribution of public court records does not make his claims any

more viable. (*See* Pl. Br. at 27.) On the contrary, an interactive computer service's

endorsement or receipt of funds in connection with content generated by a third

party does not affect the viability of a Section 230 defense. *See*, *e.g.*, *Black v. Google*

*Inc.*, No. 10–02381 CW, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010) (stating that whether Google sponsored or endorsed content at issue was irrelevant because the content was generated by a third-party); *Rosetta Stone Ltd. v. Google Inc.*, 732 F. Supp. 2d 628, 633 (E.D. Va. 2010) (holding that Section 230 shielded Google from liability for content created by a third party even though Google received payment when users viewed content), *aff'd*, 676 F. 3d 144 (4th Cir. 2012); *GW Equity LLC v. Xcentric Ventures LLC*, No. 3:07-CV-976-O, 2009 WL 62173, at *13 (N.D. Tex. Jan. 9, 2009) (rejecting the claim that a website operator was not entitled to Section 230 immunity because it profited from user-posted content); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) (stating that website operator's use of third-party content for its own financial gain was legally irrelevant). Indeed, a D.C. federal court has held that even direct royalty payments to the creators of allegedly wrongful content cannot overcome Section 230's protection. *See Blumenthal*, 992 F. Supp. at 51-52; *see also Bates*, 2006 WL 3813758, at *4 (emphasizing that plaintiffs had failed to show "that Congress intended the question of immunity to turn on how the internet service provider earns its revenue"). Accordingly, Nieman's allegation that Defendants profited from the publication or distribution of court records from his prior litigation does not prevent dismissal of his claims.

### E. Nieman's RICO and Right of Publicity Claims Are Subject to Section 230 Defenses

The District Court judge agreed that Section 230 "bars many of Plaintiff's claims" and questioned whether it would bar Plaintiff's claims under the Lanham

Act, IRPA, or RICO Act. (D. Ct. Op. at 25.) The District Court also noted that it need not reach these issues because it had already determined that the Complaint failed to state a claim and that the First Amendment barred all of Nieman's claims. (*Id.* at 27.) Likewise, this Court may not reach this issue. If it does, however, Defendants concede that if Nieman could state a Lanham Act claim, it would not be subject to a Section 230 defense. On the other hand, Nieman's RICO claims and right of publicity claims are subject to a Section 230 defense and this Court should affirm their dismissal on that basis.

Although Nieman's civil RICO claim is premised on a federal criminal statute, its dismissal would not impair the enforcement of any federal criminal statute. Section 230(e)(1) says that the protection afforded by Section 230 should not be construed to impair the enforcement of any federal criminal statute. 47 U.S.C. § 230(e)(1). The plain text of this provision establishes that the exception does not cover private civil claims. *See Bates*, 2006 WL 3813758, at *21 (concluding that Section 230's criminal law exception relates solely to government enforcement actions and not civil actions premised upon criminal statutes). Section 230 preserves law enforcement's ability to enforce federal criminal laws, but prohibits private litigants from bringing claims based on their subjective beliefs that a computer service has violated a federal criminal law. *Id.* at *21-22. To hold otherwise would eviscerate Section 230's protection by permitting any civil litigant to pursue tenuous claims like civil RICO claims against interactive computer

services. *See Midwest Grinding Co.*, 976 F.2d at 1025 (criticizing attempts by plaintiffs to transform common law civil claims into federal RICO claims).

Nieman's commercial misappropriation/right of publicity claims are also barred by Section 230 because they do not fall under the statutory exception for intellectual property claims. Although the District Court noted that Nieman's claims might be construed as intellectual property claims, this Court should conclude otherwise. (D. Ct. Op. at 25-26.) The Communications Decency Act does not expressly define intellectual property, but the generally recognized federal definition includes copyright, patent, and trademark. *See Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1448 (11th Cir. 1998). Courts are split on whether state law right of publicity claims fall within Section 230's intellectual property exemption, but the Ninth Circuit's decision in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007), provides a reasoned analysis of why the statute's exemption of intellectual property should be limited to federal intellectual property laws. *See id.* at 1118-19 ("In the absence of a definition from Congress, we construe the term 'intellectual property' to mean 'federal intellectual property.'"). In *Perfect 10*, the court reasoned that the scope of federal intellectual property law is relatively well-established, whereas a broader interpretation of intellectual property could include a wide range of unidentified state law claims, thereby undermining Congress's expressed goal of insulating the development of the Internet from the various state-law regimes. *Id.* at 1118; *but see Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 (11th Cir. 2006) (declining to decide whether state law right of publicity claim

falls within intellectual property exception of Section 230 because claims were otherwise barred). In other words, a broad construction of the term intellectual property law would deprive Defendants of the very protection the statute is intended to afford them.

This Court has not specifically addressed the scope of Section 230's intellectual property exception, which remains an unsettled issue of federal law. *See Stayart*, 651 F. Supp. at 887-88 (acknowledging that the application of the CDA to a state law right of publicity claim "may present an unsettled issue of federal law" and declining to decide state law issues after dismissing federal claims); *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 317-318 (D.D.C. 2011) (collecting cases demonstrating split in authority and declining to decide scope of intellectual property claims exempted from Section 230). Should this Court reach this issue, however, it should construe the term intellectual property narrowly to prevent this limited exception from swallowing the rule that Section 230 otherwise supplies.

Based on the Section 230 analysis, this Court should affirm the dismissal of the following claims: Counts I & III (HRA claims); Counts II & IV (commercial misappropriation claims); Counts V & VI (Section 1981 claims); Count VIII (intentional interference with economic advantage); Count IX (unjust enrichment/civil conspiracy); and Count X (RICO).

## **CONCLUSION**

WHEREFORE, Defendants-Appellees VersusLaw, Inc., Joseph W. Acton, Google Inc., Yahoo!, Inc., and Microsoft Corporation hereby request that this Court

affirm the decision of the trial court to dismiss this case with prejudice, and award

such other relief as this Court may deem just and proper.

Dated: October 12, 2012

VERSUSLAW, INC. and JOSEPH W.
ACTON

By: /s/ Steven P. Mandell
            One of their Attorneys

Steven P. Mandell (ARDC #6183729)
Steven L. Baron (ARDC #6200868)
Elizabeth A.F. Morris (ARDC #6297239)
MANDELL MENKES LLC
One North Franklin, Suite 3600
Chicago, IL 60606
Telephone: (312) 251- 1000
Facsimile: (312) 251-1010

GOOGLE, INC.

By: /s/ Jade R. Lambert
            One of Its Attorneys

Jade R. Lambert
PERKINS COIE LLP
131 S. Dearborn St., Suite 1700
Chicago, Illinois 60603
Telephone:   (312) 324-8523
Facsimile:    (312) 324-9400

Respectfully submitted,

MICROSOFT CORP. AND
YAHOO!, INC.

By: /s/ Lynn U. Thorpe
            One of their Attorneys

Lynn U. Thorpe
GONZALEZ SAGGIO AND HARLAN
  L.L.C.
Two Prudential Plaza
180 N. Stetson Ave.
Chicago, Illinois 60601
Telephone:   (312) 236-0475
Facsimile:    (312) 236-1750

Peggy A. Miller
GONZALEZ SAGGIO AND HARLAN
  L.L.C.
292 Madison Ave., Fl. 19
New York, New York 10017
Telephone:   (212) 380-9560
Facsimile:    (212) 380-9561

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,676 words as calculated by Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook, 12-point font.


Dated:  October 12, 2012          By: /s/ Steven P. Mandell
                                 Attorney for VersusLaw, Inc. and Joseph W. Acton

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, counsel for the Claimants-Appellants, hereby certifies that on October 12, 2012, I caused to be served the **Joint Brief and Supplemental Appendix of Defendants-Appellees VersusLaw, Inc., Joseph W. Acton, Yahoo!, Inc., Google Inc., and Microsoft Corp.** by electronically filing the foregoing document with the Clerk of the Court using CM/ECF. In addition, on Monday, October 15, 2012 (which is within seven days of electronic filing), I will cause to be served by hand one original and fourteen duplicate paper copies of the foregoing document to the Clerk's Office, U.S. Court of Appeals for the Seventh Circuit, 219 S. Dearborn Street, Suite 2722, Chicago, Illinois 60604.

I also certify that on October 12, 2012, I caused the foregoing document to be served on all counsel and parties of record via transmission of Notices of Electronic Filing generated by CM/ECF.

I also certify that on October 12, 2012, I caused the foregoing document to be served on the *pro se* party identified below by mailing two copies via Federal Express, with proper postage prepaid, and sending one copy via electronic mail to the address listed below:

> Jason L. Nieman
> 1700 Windycrest Dr.
> Springfield, IL 62704
> nieman46804@yahoo.com

> /s/ Steven P. Mandell

## <u>SUPPLEMENTAL APPENDIX</u>

Plaintiff's Appendix is incomplete. He included the District Court opinion but omitted Magistrate Judge Bernthal's Report & Recommendation. Cir. R. 30(b)(2). Accordingly, Defendants are including a copy of the Report & Recommendation with their brief.

Counsel certifies that the contents of Plaintiff's Appendix and Defendants' Supplement Appendix include all documents required by Cir. R. 30(a)-(b).

Dated: October 12, 2012                    <u>/s/ Steven P. Mandell          </u>

3:12-cv-03104-SEM-DGB # 39 Page 1 of 10

Case: 12-2810 Document: 21 Page 1 of 68 Filed: 10/12/2012 Pages: 68 E-FILED
Wednesday, 13 June, 2012 03:16:44 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JASON NIEMAN,                          )
                                       )
              Plaintiff,               )
                                       )
    v.                                 )
                                       )        Case No. 12-3104
VERSUSLAW, INC., JOSEPH W.             )
ACTON, YAHOO, INC., GOOGLE INC.,       )
and MICROSOFT, INC.,                   )
                                       )
              Defendants.              )

## REPORT AND RECOMMENDATION

In April 2012, Defendants filed a Notice of Removal (#1), bringing this case to this Court from the Circuit Court of Sangamon County. Plaintiff Jason Nieman, acting pro se, brings suit against the following defendants: Microsoft Corp., Versuslaw, Inc., Joseph W. Acton, Yahoo! Inc., and Google, Inc. Plaintiff brings suit for an alleged violation of his civil rights pursuant to § 1981, in addition to other federal and state law claims. The operative complaint in this litigation is Plaintiff's Second Amended Complaint at Law (#1-5).

The Court now has pending before it several motions to dismiss. In this Report and Recommendation, the Court addresses the following motions: Defendant Google Inc.'s 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint (#16), Defendants' Microsoft Corporation and Yahoo!, Inc.'s Rule 12(b)(6) Motion to Dismiss Counts III, VI, VII, VIII, IX and X of the Second Amended Complaint (#18), Defendants Microsoft Corporation's and Yahoo!, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings on Counts III, IV, VIII, IX and X of the Second Amended Complaint (#22), and Defendants Versuslaw, Inc.'s and Joseph W. Acton's Motion to Dismiss Plaintiff's Second Amended Complaint at Law (#27).[1] Plaintiff has

---

[1] With respect to (#22), Defendants moved to amend this motion, in Microsoft Corporation's and Yahoo!, Inc.'s Motion to Correct Their Motion for Judgment on the Pleadings to Add Count VI. (#35).

responded to each of these motions.[2]  After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that all of these motions **(#16, 18, 22, and 27)** be **GRANTED**, and that Plaintiff's complaint be dismissed in its entirety with respect to all Defendants.

## I. Background

The following background is taken from Plaintiff's Second Amended Complaint at Law (#1-5).  Plaintiff is an insurance claims industry professional.  From November 2009 through March 2011, Plaintiff pursued litigation against his former employer, Nationwide Mutual Insurance Company (hereinafter "Nationwide"), and several related defendants.  In approximately January 2009, Plaintiff discovered that certain Internet websites were linking copies of information related to the litigation to his name, such that an internet browser search for his name would provide results that referenced the filings or rulings in his litigation against Nationwide.  Plaintiff alleges that these references were occurring by way of paid legal search websites such as Lexis/Nexis.com, Justia.com, Leagle.com, and Versuslaw.com.  Plaintiff alleges these entities "secure the case information and related documents by way of sites such as PACER and then 'mirror' it on to the internet by way of their sites and servers."  (#1-5, p. 10, ¶ 15).

From January 2009 to present, Plaintiff has applied to various positions of employment. Plaintiff alleges that these potential employers have completed internet browser searches of his name using search engines operated by Defendants, such as Google.com, Yahoo.com, and Bing.com.  Plaintiff alleges that prospective employers have found documents related to his litigation against Nationwide through conducting these searches, and have consequently disqualified him from candidacy for the positions to which he has applied.  In summary, Plaintiff alleges that "Plaintiff has been effectively 'blacklisted' as to employment opportunities due to

---

[2]Plaintiff's responses to the various motions are in the record as follows: Plaintiff responds to (#16) in (#26), Plaintiff responds to (#18 and #22) in (#31), and Plaintiff responds to (#27) in (#33).

2

the ease at which these references appear pursuant to a simple name search, and due to the unlawful acts of third parties who then use such information to unlawfully disqualify the Plaintiff's candidacy." (#1-5, p. 10).

## II. Standard

Defendants' motions to dismiss seek dismissal under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Dismissal is appropriate only if Plaintiff cannot demonstrate that he is plausibly entitled to relief under the facts he has alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must give fair notice of what the claim is and the grounds upon which it rests. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). However, fair notice is not enough by itself; the allegations must show that it is plausible, rather than merely speculative, that the plaintiff is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint). In considering the plaintiff's factual allegations, the Court should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). District courts, however, are required to liberally construe complaints filed by pro se litigants. *Marshall v. Knight*, 445 F.3d 965 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

3

### III. Discussion

Plaintiff brings the following claims against all Defendants: claims under the Illinois Human Rights Act, commercial misappropriation, violation of § 1981 of the Civil Rights Act, violation of the Lanham Act, intentional interference with current and prospective economic advantage, unjust enrichment / civil conspiracy, and violations of the RICO Act. All of the Defendants argue that Plaintiff's claims are barred by Section 230 of the Communications Decency Act (hereinafter "the CDA"). Additionally, all the Defendants argue that, even apart from the question of immunity presented by the CDA, Plaintiff has failed to state a claim for which relief can be granted.

The Court will begin by addressing a basic point: reproducing information obtained from judicial records maintained in connection with a public court proceeding cannot give rise to liability. Second, the Court will address the issue of Defendants' immunity under the CDA and whether Plaintiff otherwise fails to state a claim.

### A. Privilege to Publish Matters Contained in the Public Record

As the Court has already noted, Plaintiff's complaint is based on the harm caused to him as a result of documents related to his litigation against Nationwide being readily accessible on the internet. The Court notes that Plaintiff's previous litigation against Nationwide is a matter of public record. The First Amendment creates a privilege to publish matters contained in the public record, even in cases where publication would offend the sensibilities of a reasonable person. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993). The Seventh Circuit has further noted that "the First Amendment greatly circumscribes the right of even a private figure to obtain damages for the publication of newsworthy facts about him, even when they are facts of a kind that people want very much to conceal." *Id*. at 1232. This Court therefore concludes that Plaintiff has not stated a claim for which he is plausibly entitled to relief, given the First Amendment protections applicable to this case.

4

## B. Section 230 of the Communications Decency Act

Section 230 of the CDA directs that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute provides broad immunity to internet service providers as to any cause of action that would make service providers liable for information originating with a third-party user of the service. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006). In discussing the statute, the Fourth Circuit has noted:

> Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran v. AOL*, 129 F.3d 326, 331 (4th Cir. 1997). However, the Seventh Circuit has noted that the statute itself does not refer specifically to "immunity," and that this statute does not operate as a general prohibition of civil liability for web-site operators and other online content hosts. *Chi. Lawyer's Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008).

Section 230 applies whenever three elements are satisfied: (1) the defendant is a provider of an interactive computer service; (2) the plaintiff's claims seek to treat the defendant as a "publisher or speaker" of allegedly harmful or unlawful information, and (3) the information at issue was "provided by another information content provider." *See* 47 U.S.C. § 230(c)(1).

In the following analysis, the Court will consider whether Plaintiff's claims are barred by § 230 or are otherwise implausible claims. In so doing, the Court will distinguish between groups of Defendants, as Plaintiff has done in his complaint. Plaintiff indicates that Defendant Versuslaw, Inc., and its owner, Defendant Joseph W. Acton are more responsible for Plaintiff's injuries than the "search engine defendants," Defendants Google, Microsoft, and Yahoo. (#1-5, p. 3). Plaintiff alleges that paid legal search websites, such as Lexis/Nexis.com, Justia.com, and Versuslaw.com secured the documents related to his litigation against Nationwide and posted it online. At Plaintiff's request, some entities removed the references

5

that caused the litigation documents to turn up as results when querying Plaintiff's name.
However, Plaintiff alleges that Defendant Versuslaw, Inc. and Defendant Acton did not comply
with the request, and that "the only remaining offending links," found when Plaintiff's name is
used as a query in a search engine, are attributable to these Defendants. (#1-5, p. 14, ¶ 23).
Plaintiff further alleges that "Defendant Versuslaw, Inc. has paid the search Defendants (Google,
Yahoo, and Microsoft) to increase and/or maintain the prominence of the links as to the
Plaintiff's protected conduct in association with a simple search of his name." (#1-5, p. 11,
¶ 18). The Court is mindful of these additional factual allegations against Defendant Versuslaw,
Inc. and Defendant Acton.

To begin an assessment of whether Plaintiff's claims are barred by the CDA: The CDA
defines an "interactive computer service" to include "any information service, system, or access
software provider that provides or enables computer access by multiple users to a computer
server." 47 U.S.C. § 230(f)(2). This definition clearly encompasses search engines. *See, e.g.,
Jurin v. Google Inc.*, 695 F.Supp.2d 1117, 1122-23 (E.D. Cal. 2010). In this case, the allegations
against Defendants Google, Yahoo, and Microsoft are based solely on Plaintiff's factual
allegations concerning search results obtained when querying Plaintiff's name using search
engines operated by these defendants. Therefore, these defendants are "interactive computer
service" providers under the statute. Additionally, a typical example of an "interactive computer
service" is a website, such as Defendant Versuslaw, which operates versuslaw.com. *See Batzel
v. Smith*, 333 F.3d 1018, 1030-31 (9th Cir. 2003) (noting that Section 230 immunity may apply
to providers and users of interactive computer services). The Court concludes that all of
defendants are internet service providers or users to whom Section 230 may apply.

Second, the Eight Circuit has succinctly summarized how the CDA operates to ensure
that internet service providers are not held liable for content developed primarily by third parties:

6

> The CDA states that '[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider,' 47 U.S.C. § 230(c)(1), and expressly preempts any state law to the contrary, id. § 230(e)(3). The CDA defines an 'information content provider' as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service.' *Id.* at § 230(f)(3). Read together, these provision bar plaintiffs from holding ISPs legally responsible for information that third parties created and developed [citation omitted]. 'Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them.' *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

*Johnson v. Arden*, 614 F.3d 785, 790-91 (8th Cir. 2010).

Stated another way, an internet service provider qualifies for immunity so long as it does not also function as an "information content provider" for the portion of the statement or publication at issue. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Section 230 provides broad immunity to internet service providers that publish content provided primarily by third parties. *Id.*

In this case, Plaintiff has specifically alleged that the offensive search results giving rise to his claim against Defendants Google, Yahoo, and Microsoft are links to copies of information related to his litigation against Nationwide. Plaintiff indicates that the links include attachments to rulings on general court matters. It is indisputable that Defendants Google, Yahoo, and Microsoft were not involved in the creation or development of these court rulings. Additionally, though Plaintiff argues Defendant Versuslaw has greater liability because it secured the documents related to his litigation against Nationwide and posted them online, this would still be considered content provided primarily by third parties. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (stating "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process"). The Court concludes that the information at issue was "provided by another information content provider." 47 U.S.C. § 230(c)(1).

The only remaining issue is whether Plaintiff's specific claims seek to treat defendants as publishers. Plaintiff brings claims federal claims under § 1981 of the Civil Rights Act, the Lanham Act, and the RICO Act. Plaintiff also brings state law claims under the Illinois Human Rights Act, and he brings state law tort claims of commercial misappropriation, intentional interference with current and prospective economic advantage, unjust enrichment, and civil conspiracy.

The Court will first address the federal claims. To begin, the claims brought under § 1981 and RICO are, quite simply, not applicable to the facts as Plaintiff has pled. *See Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996) (setting forth elements of a § 1981 claim); *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) (setting forth elements of a RICO claim). Plaintiff's civil rights claim is implausible, as Plaintiff is not a member of a racial minority. Plaintiff's RICO claim is also implausible, as Plaintiff's complaint is devoid of allegations that could support a finding of an enterprise or a pattern of racketeering activity. Next, considering Plaintiff's claim under the Lanham Act, the Seventh Circuit considered an analogous case in *Stayart v. Yahoo! Inc.*, 623 F.3d 436 (7th Cir. 2010), in which a plaintiff brought suit against Yahoo! Inc. based on search results obtained when using her name as a search query. In that case, the Seventh Circuit did not reach the issues concerning the CDA. Instead, the court held that the plaintiff lacked standing to bring suit under the Lanham Act because she lacked a commercial interest in her name. Plaintiff's case here is no different, as the Seventh Circuit's reasoning reflects that one's interest in their professional reputation does not amount to a commercial interest in their name.

Second, Defendants argue that Plaintiff's state claims are barred by the CDA. Though Plaintiff nominally brings a variety of types of claims, ranging from claims under IHRA to civil conspiracy, the Court notes that the factual essence of Plaintiff's claims is actually more akin to defamation and various privacy torts. Many circuit courts have held that the CDA bars claims under any state law theory to persons harmed by allegedly defamatory material, where the

8

defendant is not a "publisher or speaker" as defined by the act. *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (summarizing holdings in five other circuit courts). While the Seventh Circuit has not directly addressed the issue of the scope of the CDA with respect to state claims for defamation, the Court is persuaded by the authority from other circuits that such immunity for defendants is appropriate in this case. Furthermore, with respect to Plaintiff's claim for commercial misappropriation, such a claim is pre-empted by the Illinois Right of Publicity Act. 765 ILCS 1075/30(a). Under the statute, there can be no liability where a person's identity is used for a non-commercial purpose, including in any news or public affairs account. 765 ILCS 1075/35(b)(2). This exemption is applicable to this case, as Plaintiff's prior litigation is a matter of public interest and public record. The Court concludes that any claim Plaintiff may have for defamation is barred by the CDA, and any privacy tort he may claim against Defendants is similarly not actionable.

Additionally, several of the state claims that Plaintiff has brought are not supported by his factual allegations. Specifically, Plaintiff brings a claim under the Illinois Human Rights Act, and also brings counts for intentional interference with current and prospective economic advantage, for unjust enrichment, and for civil conspiracy. To establish a prima facie case of retaliation under IHRA, a plaintiff must show that he engaged in a protected activity, and that as a result his employer committed an adverse act against him. *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill.App.3d 1, 7 (Ill. App. Ct. 1994). In this case, Defendants have no employment relationship with Plaintiff. Similarly, Plaintiff's claim for interference with prospective economic advantage must fail because the facts, as Plaintiff has alleged them, indicate Plaintiff did not have any valid business relationship or expectancy. *See Small v. Sussman*, 306 Ill.App.3d 639, 648 (Ill. App. Ct. 1999) (stating elements of tortious interference with prospective economic advantage). Plaintiff's Count IX for unjust enrichment and civil conspiracy is also factually unsupported. These specific claims are most simply addressed by noting, as this Court has already discussed above, that providing online access to judicial public records implicates First Amendment privileges, and so these activities cannot form the basis of a tort for civil conspiracy or unjust enrichment.

As such, this Court concludes that the facts, as Plaintiff has alleged them, indicate he does not have any viable claim against Defendants.  Defendants enjoy a First Amendment privilege to publish matters of public record, any state law defamation or privacy claim would be barred by CDA, and the facts, as Plaintiff has alleged them, do not support his other various statutory and common law claims.

## IV.  Summary

For these reasons, the Court recommends that Defendants' various motions to dismiss (#**16**, **18**, **22**, and **27**) be **GRANTED**, and that Plaintiff's complaint be dismissed in its entirety with respect to all Defendants.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986)**.**

ENTERED this 13th day of June, 2012.

_____s/DAVID G. BERNTHAL_____
UNITED STATES MAGISTRATE JUDGE
